UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES R. REINHOLDT, JR.,

                              Petitioner,

       v.

STEVE SINCLAIR and THE
ATTORNEY GENERAL OF THE
STATE OF WASHINGTON,

                              Respondents.

No. C09-5049 RBL/KLS

**REPORT AND RECOMMENDATION**
**Noted for: September 25, 2009**

Petitioner James R. Reinholdt, Jr. seeks federal habeas corpus relief pursuant to 28
U.S.C. § 2254. This case has been referred to United States Magistrate Judge Karen L.
Strombom pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4. Mr. Reinholdt
seeks to challenge his 2007 convictions. Dkts. 1-2 and 6[1]. Respondents filed an Answer and
submitted relevant portions of the State court record. Dkts. 13 and 14.

Upon review, it is the Court's recommendation that Mr. Reinholdt's petition should be
dismissed without prejudice as his claims are unexhausted.

## I. STATEMENT OF THE CASE

Mr. Reinholdt is in the custody of the Washington Department of Corrections (DOC)
pursuant to a conviction by guilty plea for second degree assault while armed with a deadly
weapon (firearm) and first degree unlawful possession of a firearm, committed on January 27,

---

[1] Mr. Reinholdt amended the face page only of his habeas petition to name the correct respondent. Dkt. 6.

2007. Dkt. 14, Exh. 1. Mr. Reinholdt was sentenced to 78 months of confinement. *Id*. at 5.

His possible early release date is in 2012. Id., Exh. 2 at p. 4.

## II. STATEMENT OF PROCEDURAL HISTORY

According to witnesses, Mr. Reinholdt confronted Peter Galloway and shot him twice

with a pistol. Dkt. 14, Exh. 3. Galloway and Reinholdt then fought over the pistol, causing it to

fire and hit Reinholdt in the head. *Id*.

The State charged Mr. Reinholdt with attempted murder in the first degree while armed

with a firearm, unlawful possession of a firearm in the second degree, and drive-by shooting. *Id*.

In a plea agreement, the State amended the charges to assault in the second degree while armed

with a firearm and unlawful possession of a firearm in the first degree. Mr. Reinholdt entered an

*Alford* plea[2]. *Id*. The trial court accepted his plea and found him guilty. It sentenced him to 78

months of confinement, which included a 36-month firearm sentence enhancement, to be

followed by 18 to 36 months of community custody. *Id*.

Through counsel, Mr. Reinholdt filed a notice of appeal. *Id*. at 1. His appellate counsel

then moved to withdraw, having found no basis for a good faith argument on appeal, and filed a

brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Id.*, Exh. 4. Proceeding pro se, Mr.

Reinholdt filed a statement of additional grounds for review. *Id.*, Exh. 6. The Washington Court

of Appeals considered Mr. Reinholdt's appeal as a motion on the merits under Washington Rule

of Appellate Procedure 18.14(a). *Id.*, Exh. 3 at 1. By way of a commissioner's ruling, the court

then found Mr. Reinholdt's appeal was wholly frivolous and affirmed his conviction. *Id*.

Through counsel, Mr. Reinholdt moved to modify the commissioner's ruling. *Id.*, Exh. 7.

The chief judge denied the motion. *Id.*, Exh. 8. Mr. Reinholdt did not move for review in the

---

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

REPORT AND RECOMMENDATION - 2

Washington Supreme Court.  The Washington Court of Appeals issued a mandate June 4, 2009.

*Id.,* Exh. 9.

### III.  ISSUES FOR FEDERAL HABEAS REVIEW

Mr. Reinholdt lists the following grounds for relief in his federal habeas corpus petition:

1.    One victim, Peter Calloway, told the detective that the perpetrator was between 5 foot 8 inches and 5 foot 10 inches tall but Petitioner is only 5 foot 5 inches tall;

2.    Petitioner's judgment was clouded by an anti-depressant at sentencing;

3.    No tests on casings or gunpowder were done to prove that the same weapon was used;

4.    No DNA tests were done on one victim's (Peter's) and Petitioner's clothing.

5.    The photograph identification procedure unfairly prejudiced Petitioner because the victim (Peter) picked him out of a set of six photos that did not contain pictures of any of Petitioner's co-defendants.

6.    The location of the victim's (Peter's) and Petitioner's bodies were found in two separate locations from each other, and there was no trail of blood to corroborate the victim's story that the victim had crawled away.

7.    The weapon used in the crime was never found and thus the evidence does not support the weapon sentencing enhancement.

8.    The co-defendants testified against Petitioner to receive more lenient sentencing and their statements do not match.

9.    One victim (Thomas) testified that as he was running away from the direction of the shooting, he saw Petitioner peeing in the bushes ahead of him and then fall because Petitioner was shot in the head. This contradicts the State's theory that I was the shooter.

10.   The victim's (Peter's) testimony is suspect because the location that he says the crime happened was illuminated by the light from a whole apartment complex and no one else from the complex witnessed the crime.

11.   Defense expert, International Forensics Laboratories, confirmed that the victim's (Peter's) statement was a lie regarding how the shooting happened.

REPORT AND RECOMMENDATION - 3

12.  Because Petitioner's co-defendants thought he was dead when they first talked to detectives, the fact that Petitioner did not die caused confusion in their statements.

13.  The victim's (Peter's) tape recorded statement to detectives was paused twice, suggesting that the detectives told him something during the two times the tape recorder was not recording.

14.  No witness testified to having seen a gun.

15.  Medical reports prove the victim's (Peter's) statement is a lie because they show that Petitioner's gunshot wound was from behind.

16.  Petitioner is a victim, too, because he was shot from behind and lost an eye. Nothing was done to find the person who shot him.

17.  The victim's (Peter's) tape-recorded statement contains substantial stuttering and sounds of "uh, uh, uh," suggesting he lied.

18.  The victim (Peter) admitted he had had a couple of drinks.

19.  Stacey, a witness, was key to the incident, but the victim (Peter) did not answer the detective's question, "Where was Stacey when all this happened?" And at that point, the tape recorder was paused.

20.  Witness Stacey first stated that Petitioner's co-defendant, Josh, shot the victim, Peter. But the interrogating detective asked leading questions, getting her to alter her response.

21.  The victim's (Peter's) statements about the location being building A or building B sound rehearsed, as if the detective told him in advance what to say.

22.  The interrogating detective asked leading questions of the victim (Peter), demonstrating that an interview had taken place before the recorded interview.

23.  Petitioner filed a motion to withdraw his guilty plea within 30 days after he realized what he had done wrong.

24.  The copy of the judgment and sentence that Petitioner signed did not have the chemical dependency finding box checked. Only after Petitioner signed it, did his trial attorney have the finding check-marked.

REPORT AND RECOMMENDATION - 4

25.     Petitioner never received a Washington Criminal Rule of Procedure 3.5 hearing to determine admissibility of evidence.

26.     Petitioner's Sixth Amendment right to counsel was violated because he was not offered an attorney during his interview at the hospital.

27.     Petitioner is innocent and was convicted by unfair means. He will submit to a polygraph to prove his innocence.

28.     Prosecutors threatened the mother of Petitioner's child with removal of the child from her custody if she did not cooperate with the prosecutor, Jack Jones. The prosecutor was under the Washington State Bar Association's investigation for a grievance filed against him by Petitioner.

Dkt. 1-2, pp. 16-23 (CM/ECF page numbering).

## IV. EVIDENTIARY HEARING

The decision to hold a hearing is committed to the court's discretion. *Williams v. Woodford*, 306 F.3d 665, 688 (9th Cir. 2002). The petitioner bears the burden of showing the need for a hearing. *Pulley v. Harris*, 692 F.2d 1189, 1197 (9th Cir. 1982), rev'd on other grounds, 465 U.S. 37 (1984); *Baja v. Ducharme*, 187 F.3d 1075 (9th.Cir. 1999). A hearing is not required if the claim presents a purely legal question, or if the claim may be resolved by reference to the state court record. *Campbell v. Wood*, 18 F.2d 662, 679 (9th Cir.) (en banc), cert. denied, 114 S. Ct. 2125 (1994).

The question of whether Mr. Reinholdt has properly exhausted his claims for relief is a legal question that may be resolved by reference to the record before this Court. Accordingly, the Court finds that an evidentiary hearing is not required.

## V. STANDARD OF REVIEW

This Court's review of the merits of Mr. Reinholdt's claims is governed by 28 U.S.C.§ 2254(d)(1). Under that standard, the Court cannot grant a writ of habeas corpus unless a petitioner demonstrates that he is in custody in violation of federal law and that the highest state

REPORT AND RECOMMENDATION - 5

court decision rejecting his ground was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(c) and (d)(1). The Supreme Court holdings at the time of the state court decision will provide the "definitive source of clearly established federal law." *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000), overruled in part on other grounds by *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

The Court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68; see also *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."). In addition, for federal habeas corpus relief to be granted, the constitutional error must have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

## VI. DISCUSSION

### A. Exhaustion

Respondent argues that Mr. Reinholdt failed to exhaust any of his claims in state court because he did not invoke one complete round of the state's established appellate review process by petitioning for review in the state's highest court and he never filed a state-court post-judgment challenge to his conviction and sentence.

REPORT AND RECOMMENDATION - 6

Section 2254(b)(1) provides that a habeas petition must be denied if the petitioner failed to exhaust his state court remedies. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In order to exhaust state remedies, the petitioner must "fairly present" his federal claims to the state courts thereby giving the state the opportunity to address and correct alleged violations of the petitioner's federal rights. *Duncan*, 513 U.S. at 365; *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir.1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Voerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

A complete round of the state's established review process includes presentation of a petitioner's claim to the state's highest court. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1993), cert. denied 513 U.S. 935 (1994). However, "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Consequently, presentation of a federal claim for the first time to a state's highest court on discretionary review does not satisfy the exhaustion requirement. *Castille*, 489 U.S. at 351; *Casey v. Moore*, 386 F.3d 896, 915-18 (9th Cir. 2004), cert. denied 545 U.S. 1146 (2005). But see *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available").

"To 'fairly present' his federal claim to the state courts, [petitioner] had to alert the state courts to the fact that he was asserting a claim under the United States Constitution." *Hiivala*,

REPORT AND RECOMMENDATION - 7

195 F.3d at 1106 (citing *Duncan*, 513 U.S. at 365-66). The Supreme Court stated in *Gray v. J.D. Netherland* that to "fairly present" a claim to the state court, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of a claim;" rather, the petitioner "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." 518 U.S. 152, 163 (1996).

Mr. Reinholdt has failed to present any of his claims to the Washington Supreme Court in any fashion. The Washington Court of Appeals considered Mr. Reinholdt's appeal and by commissioner's ruling, affirmed his conviction on September 26, 2008. Dkt. 13, Exh. 3. On December 24, 2008, the Washington Court of Appeals affirmed the judgment. *Id.*, Exh. 8. Mr. Reinholdt did not petition for review in the Washington Supreme Court. On June 4, 2009, the Washington Court of Appeals issued its mandate. *Id.*, Exh. 9.

Mr. Reinholdt acknowledges that he "stopped appealing after [he was] denied in Division II." Dkt. 1-2, pp. 9, 13. There is also no indication that Mr. Reinholdt filed a personal restraint petition in the Washington State courts regarding any of his habeas claims. See RCW 10.73.090(1) (petition or motion for collateral attack on judgment and sentence in criminal case must be filed within one year after judgment becomes final).

Petitioners must fairly present their federal claims to state courts in order to give the State the opportunity to pass upon and correct alleged violation of its prisoners' federal rights. If the state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. See *Duncan*, 513 U.S. at 365-366 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971), internal quotation marks omitted); see also, *Keeney v. Tamayo-Reyes*,

REPORT AND RECOMMENDATION - 8

504 U.S. 1, 10 (1992) (exhaustion must be "serious and meaningful").  In order to exhaust a habeas claim, a petitioner must properly raise it on every level of direct review. *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992).

Because Mr. Reinholdt did not properly raise his habeas claims to the Washington Supreme Court for review, all of his claims are unexhausted and this Court is precluded from granting him relief.  *See* 28 U.S.C. § 2254(b)(1).

**B.      Cause and Prejudice or Fundamental Miscarriage of Justice**

Unless it would result in a "fundamental miscarriage of justice," a petitioner who procedurally defaults may receive federal review of the defaulted claims only if he demonstrates "cause" for his procedural default and "actual prejudice" stemming from the alleged errors. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *Francis v. Henderson*, 425 U.S. 536, 538-39 (1976).  "The fact that [a petitioner] did not present an available claim or that he chose to pursue other claims does not establish cause."  *Martinez-Villareal v. Lewis*, 80, F.3d 1301, 1306 (9th Cir. 1996).

Only if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," will he be entitled to federal *habeas corpus* review. *See Boyd v. Thompson,* 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. at 750.

To satisfy the "cause" prong, petitioner must show that "some objective factor external to the defense" prevented him from complying with the state's procedural rule.  *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Objective factors constituting "cause" include "interference by officials" making compliance with the

procedural rule impracticable, as well as "a showing that the factual or legal basis" for the claims "was not reasonably available." *Id*. at 493-94 (internal quotes omitted).  Constitutionally ineffective assistance of counsel also constitutes cause, but any attorney error short of that will not excuse procedural default. *Id.* at 494.

The mere fact that a petitioner is *pro se* or lacks knowledge of the law, furthermore, is insufficient to satisfy the cause prong.  That is, "[w]hen a pro se petitioner is able to apply for post-conviction relief to a state court, the petitioner must be held accountable for failure to timely pursue his remedy to the state supreme court." *Hughes v. Idaho State Board Of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding petitioner's claims of illiteracy and lack of help in appealing post-conviction petition, though unfortunate, to be insufficient to meet cause standard); *Boyd*, 147 F.3d at 1126-27.  Once a petitioner establishes cause, he must show "'actual prejudice' resulting from the errors of which he complains." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)).  Such prejudice exists if the alleged errors worked to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original).

In the alternative, a *habeas corpus* petition may be granted without a showing of cause in those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey*, 499 U.S. at 494; *Murray*, 477 U.S. at 495-96.

Mr. Reinholdt has made no showing that some objective factor external to his defense prevented him from raising his habeas claims at every level of state court review.  Because Mr. Reinholdt  "cannot establish any reason, external to him, to excuse his procedural default," this Court need not address the issue of actual prejudice." *Boyd*, 147 F.3d at 1127; *Thomas v. Lewis*,

945 F.2d 1119, 1123 n.10 (9th Cir. 1991).  Furthermore, because Mr. Reinholdt does not present new evidence of actual innocence, this is not the kind of extraordinary instance where the petition should be granted despite the absence of a showing of cause. *McCleskey*, 499 U.S. at 494; *Murray*, 477 U.S. at 495-96.  See also, *Schlup v. Delo*, 115 S. Ct. 851, 867 (1995) ("The exception is available only where the petitioner 'supplements his constitutional claim with a colorable showing of factual innocence.'")

In this case, Mr. Reinholdt fails to explain why he did not fully and fairly present his unexhausted habeas claims as specific federal constitutional violations at every level of state court appellate review.  Therefore, he cannot establish cause, prejudice or a fundamental miscarriage of justice.  Absent such a showing, Mr. Reinholdt's unexhausted habeas claims are not cognizable in federal court.  As it appears that Mr. Reinholdt has not previously filed a personal restraint petition in the Washington state courts, he would not be subject to the procedural bar for successive petitions under RCW 10.73.140.  Therefore, the undersigned recommends that his habeas petition be dismissed without prejudice.

## VIII.  CONCLUSION

Mr. Reinholdt failed to present his habeas claims to the Washington Supreme Court as federal constitutional violations.   Therefore, these claims are unexhausted and must be dismissed.  *See, Duncan v. Henry*, 513 U.S. at 365-366.   However, because Mr. Reinholdt is still able to file a personal restraint petition in the Washington State courts, the claims should be dismissed without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a

waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for

consideration on **September 25, 2009**, as noted in the caption.


DATED this  9th  day of September, 2009.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12